NO. 07-12-00065-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 27, 2012

---

IN THE INTEREST OF C.B., A CHILD

---

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 78,825-E; HONORABLE DOUGLAS WOODBURN, JUDGE

---

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

By this accelerated appeal, appellant, the mother of minor child C.B., appeals a final order of the trial court terminating her parental rights to C.B.[1] The sole predicate ground relied on by the trial court for termination of the mother's rights[2] was Family Code § 161.001(1)(O) which *inter alia* requires proof that the child was removed from

---

[1] We refer to appellant only as "the mother" to protect the minor child's identity. *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2011) (appellate court may identify parties in opinion by fictitious names or their initials); Tex. R. App. P. 9.8(b)(1)(A) (West 2011) (requiring use of initials or fictitious name in some cases).

[2] The trial court found D.W. was the presumed father of C.B. His parental rights to C.B. were terminated on a finding of waiver of interest. The court terminated any parental rights of an alleged "unknown father" of C.B. on a best interest finding. According to the Department's affidavit appended to its original petition, DNA testing excluded the mother's paramour, who lived with her, as the biological father of C.B.

the parent under Family Code Chapter 262 for the abuse or neglect of the child. Through a single issue on appeal, the mother argues the evidence of abuse or neglect was legally and factually insufficient to sustain a finding under § 161.001(1)(O).[3] Agreeing, we will reverse and render in part and affirm in part.

Background

Because the issue presented is narrow, we will discuss only the facts necessary for our disposition. Appellee, the Department of Family and Protective Services, removed two-year-old C.B. from the mother pursuant to § 262.104[4] on March 30, 2010. In its petition filed the next day, the Department alleged multiple grounds for termination of the mother's parental rights to C.B. Appended to the Department's petition was an affidavit of a Department investigator that contained a description of the circumstances that lead to C.B.'s removal from the mother.

The trial court's temporary order issued after an April 13, 2010 "full adversary hearing" contained the following findings including those of § 262.201(b)[5]:

> Having examined and reviewed the evidence, including the sworn Affidavit accompanying the Original Petition and based upon the facts contained therein, the Court finds there is sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child; (2) the urgent need for protection required the immediate removal of the child and reasonable efforts

---

[3] Tex. Fam. Code Ann. § 161.001(1)(O) (West Supp. 2011). All subsequent citations to the Family Code are by section number or chapter number only.
[4] Section 262.104 (West 2008).

[5] Section 262.201(b) (West Supp. 2011).

2

consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and (3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

The Court finds sufficient evidence to satisfy a person of ordinary prudence and caution that there is a continuing danger to the physical health or safety of the child and for the child to remain in the home is contrary to the welfare of the child.

The Court finds with respect to the child, [C.B.], that reasonable efforts consistent with the child's health and safety have been made by the Department to prevent or eliminate the need for removal of the child from the home and to make it possible for the child to return home, but that continuation in the home would be contrary to the welfare of the child.

The order further notified the mother of the actions necessary to obtain the return of C.B.

The family service plan was reviewed in April, August, and December 2010 and April 2011. Through an order signed in March 2011, pursuant to § 263.401(b)[6], the case was retained on the trial court's docket. The matter proceeded to final disposition through a bench trial conducted in November 2011, with the Department seeking termination.

At trial, the Department presented its proof relevant to the removal of C.B. largely through the testimony of a conservatorship worker. She was not the investigator who signed the affidavit appended to the Department's petition, but was assigned C.B.'s case during April 2010.[7] According to the worker, C.B. was removed because the

---

[6] Section 263.401(b) (West 2008).

[7] At times, the worker qualified her testimony with phrases such as, "I believe"; "I have not read"; "I wasn't the investigator on it, so I'm not for certain"; and "to my knowledge."

mother was involved in domestic violence and used methamphetamine. The worker believed the mother was the victim of the domestic violence. And later in trial the mother acknowledged she was a victim of domestic violence. It was also the belief of the worker that domestic violence was ongoing between the mother and her paramour. The worker was not, however, able to recall whether a particular incident brought a report to the Department. Nor did the worker elaborate on specific acts of domestic violence. The worker also testified that the mother tested positive for methamphetamine at the time C.B. was removed.

The trial court judicially noticed its April 2010 temporary order, and drug test reports regarding the mother and C.B. A test of a sample from the mother collected in late January 2010, was positive for the presence of methamphetamine. The Department collected samples from C.B. in late January and in April 2010; both were negative.

At the end of trial, the court orally rendered judgment terminating the mother's parental rights and appointing the Department managing conservator. It found three predicate grounds for termination, § 161.001(1)(D), (E) and (O), and that termination was in the best interest of C.B. However, the written judgment, signed by the court on January 17, 2012, rests its decree of termination exclusively on the predicate ground of § 161.001(1)(O), and contains no written findings regarding the subsection (D) or (E) grounds.[8] The written judgment also appoints the Department permanent managing conservator of C.B. Findings of fact and conclusions of law were requested by the mother but not filed. This appeal followed.

---

[8] The record contains no explanation for the difference between the grounds announced by the court from the bench and the single ground listed in its written judgment.

4

Analysis

Because termination of parental rights is such a drastic act, due process requires that the petitioner justify termination by clear and convincing evidence. *See* § 161.206(a) (West 2011); *In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2011).

When both legal and factual sufficiency challenges are presented, we first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex. 1981). On a legal sufficiency analysis of a judgment terminating parental rights:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient.

*In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.,* 283 S.W.3d at 344-345 (quoting *In re J.F.C.*).

For termination of parental rights under § 161.001, the trial court must find, by clear and convincing evidence, both that the parent engaged in one of the predicate grounds for termination listed in § 161.001(1) and that termination of the parent-child relationship is in the best interest of the child. *See* § 161.001(1),(2); *Horvatich v. Tex. Dep't of Protective & Regulatory Servs.,* 78 S.W.3d 594, 596 (Tex.App.--Austin 2002, no pet.).

Because the court's written judgment ordered termination of the mother's parental rights only on the basis of § 161.001(1)(O), and because it is undisputed that our review of the judgment is limited to that ground, we do not discuss subsections (D) or (E), or express any opinion on the sufficiency of the evidence to support termination on either of those grounds.

To support termination under subsection (O), the Department was required to prove the mother:

> [F]ailed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

§ 161.001(1)(O).

The proof required includes evidence demonstrating that the child was removed from the parent for the abuse or neglect of the child. *In re H.S.V.,* 04-12-0150-CV, 2012

6

Tex. App. Lexis 5470, at *9 (Tex.App.--San Antonio July 11, 2012, n.p.h.) (mem. op.) (describing requirement as "evidence that the parent abused or neglected the child"); *In the Interest of S.N.*, 287 S.W.3d 183, 190 (Tex.App.--Houston [14th Dist.] 2009, no pet.) (abuse or neglect is "required element" of subsection (O)); *Mann v. Dep't of Family and Protective Servs.,* No. 01-08-01004-CV, 2009 Tex. App. Lexis 7326, at *14 (Tex.App.--Houston [1st Dist.] Sept. 17, 2009, no pet.) (mem. op.) (subsection (O) requires proof by clear and convincing evidence that child was removed due to abuse or neglect by parent). By her sole issue on appeal, the mother contends the evidence presented at trial was legally and factually insufficient to establish that C.B. was removed from the mother for abuse or neglect. She does not dispute that the Department had temporary managing conservatorship of C.B. for more than nine months or that she failed to complete the actions necessary to obtain the return of C.B. as set forth in the trial court's orders.

As noted, according to the Department's witness at trial, C.B. was removed from the mother because of domestic violence in her home and methamphetamine use. Scanty trial testimony showed the mother was the victim of unspecified acts of domestic violence. The mother's own testimony and drug test results affirmed that she engaged in the use of methamphetamine.

Chapter 161 does not contain definitions of the terms "abuse" or "neglect." Our courts have said that whether a child was removed from the parent under Chapter 262 for abuse or neglect is determined on a case-by-case basis. *In re H.S.V.,* 2012 Tex. App. Lexis 5470, at *9-10 (citing *In re A.A.A.,* 265 S.W.3d. 507, 515 (Tex.App.--Houston [1st Dist.] 2008, pet. denied); *In re M.G.,* No. 14-09-00136-CV, 2009 Tex. App. Lexis

7

8811, at *23 (Tex.App.--Houston [14th Dist.] Nov. 17, 2009, no pet.) (mem. op.). Even a case-by-case analysis, however, requires a standard. Chapter 261, Investigation of Report of Child Abuse or Neglect, contains definitions of both terms. § 261.001(1) & (4) (West 2008). While the definitions in Chapter 261 expressly apply to that chapter,[9] and while the definitions given there are not exhaustive,[10] we find no reason why the meanings given the terms abuse and neglect there should not inform our application of those terms under Chapter 161. *See* Tex. Gov't Code Ann. § 311.011(b) (West 2005) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly").[11]

Pertinent to this case, Chapter 261's definition of abuse specifically addresses the subject of use of controlled substances, defining abuse to include "the current use by a person of a controlled substance as defined by Chapter 481, Health and Safety Code, in a manner or to the extent that the use results in physical, mental, or emotional injury to a child." § 261.001(1)(I). The record before us contains little evidence of C.B.'s

---

[9] The definitions section in Chapter 261, § 261.001, begins with the words "[i]n this chapter."

[10] *See* Tex. Gov't Code Ann. § 311.005(13) (West 2005) (stating term "includes" is term of enlargement and not of exclusive enumeration). Acts or omissions not listed in those definitions thus may constitute abuse or neglect of a child.

[11] *See also Dickens v. Willis,* 957 S.W. 657, 659 (Tex.App.--Austin 1997, no pet.) (stating in absence of definition court may look to similar area of law for guidance; *L & M-Surco Mfg., Inc. v. Winn Tile Co.,* 580 S.W.2d 920, 926 (Tex.Civ.App.--Tyler 1979, writ dism'd w.o.j.) ("Where the same or a similar term is used in the same connection in different statutes, it will be given the same meaning in one that it has in another, unless there is something to indicate that a different meaning was intended. This rule applies with particular force where the meaning of a word as used in one act is clear or has been judicially determined, and the same word is subsequently used in another act pertaining to the same subject").

physical, mental or emotional condition. We see no basis on which the court could have determined that the mother's drug use resulted in injury to C.B.[12]

Included among Chapter 261's definitions of neglect is that of section 261.001(4)(B)(i), defining the term to include "placing a child in or failing to remove a child from a situation that a reasonable person would realize requires judgment or actions beyond the child's level of maturity, physical condition, or mental abilities and that results in bodily injury or a substantial risk of immediate harm to the child." The mother's failure to distance herself and C.B. from the domestic violence perpetrated by her paramour, who lived with her, could be termed a failure to remove C.B. from a situation requiring actions beyond the child's level of maturity. And a pattern of violence directed toward the mother by her paramour would carry some risk that a two-year-old child in the home may suffer harm, but this record does not support a conclusion that C.B. was subjected to "a substantial risk of immediate harm."

Although we find Chapter 261's definitions of abuse and neglect instructive, comparison of this record with that of other cases applying subsection (O) leads also to the conclusion the evidence here is legally insufficient.

The Department points to the trial court's temporary order following the full adversary hearing, in which the trial court found sufficient evidence existed "to satisfy a person of ordinary prudence and caution" that there was a danger to the physical health

---

[12] *Cf.* § 262.104(b) (West 2008) (authorizing removal of child permitted to remain on premises used for manufacture of methamphetamine).

9

or safety[13] of C.B., caused by an act or omission of the person entitled to possession, and for the child to remain in the home was contrary to the child's welfare. The court also found an "urgent need" for C.B.'s protection required the child's immediate removal, and found there was "a substantial risk of a continuing danger" if the child were returned home. While at that stage of the proceeding the court made these as well as the other findings necessary for the Department to retain possession of C.B. under § 262.201(b), it made no findings that C.B. was actually abused or neglected. We conclude the temporary order of which the court took judicial notice does not provide the evidence of abuse or neglect required for termination under the subsection (O) ground. *See In re E.C.R.,* No. 01-11-0791-CV, 2012 Tex. App. Lexis 2114, at *11-17 (Tex.App.-- Houston [1st Dist.] Mar. 15, 2012, n.p.h.) (despite body of evidence containing findings in temporary order of "danger to the physical health or safety" of the child and "a substantial risk of a continuing danger if the child is returned home," evidence held legally insufficient to establish abuse or neglect under § 161.001(1)(O)).

A reporter's record of the full adversary hearing was not filed in this court. The temporary order recites that after examining and reviewing "the evidence, including the sworn Affidavit accompanying the Original Petition and based upon the facts contained therein," the trial court reached its findings. The Department asserts we may consider in our sufficiency analysis the contents of the affidavit filed with its original petition. As noted, the Department took possession of C.B. pursuant to § 262.104, and filed its petition the next day, in accordance with § 262.105.

---

[13] *See* § 101.009 (West 2008) (defining "danger to the physical health or safety of a child" to include "exposure of the child to loss or injury that jeopardizes the physical health or safety of the child without regard to whether there has been an actual prior injury to the child").

The mother argues against our consideration of the contents of the affidavit, pointing out it was not offered into evidence at trial. Because we find the contents of the affidavit add little to the Department's proof, and do not establish the mother abused or neglected C.B., we do not address the propriety of including the affidavit among the evidence.

According to the affidavit, whose affiant did not testify at trial, the Department took emergency possession of C.B. because the mother and her paramour tested positive for methamphetamine use and the mother "admitted to recent and chronic methamphetamine use"; the mother intentionally attempted to avoid contact with the Department and was a "flight risk"; and the mother "continued to expose [C.B.] to domestic violence between herself and [her paramour]." Elsewhere the affidavit states the Department decided to seek "legal intervention" because the mother's four-year-old daughter was previously removed and the mother had a positive drug test.

The affidavit also recounts the mother's pre-removal interview with the Department. There, the mother stated she used methamphetamine "about once a month" by inhalation outdoors. It appears on these occasions C.B. was left inside. Her paramour kept methamphetamine in a cabinet beside his bed and smoked the substance on a regular basis behind a locked door. On these occasions, the mother kept C.B. with her in the living room or took him outdoors. The mother also described herself as the victim of domestic violence perpetrated by her paramour. On several occasions, he struck her on the head in the presence of C.B. In an episode recent to the affidavit, he struck her on the head with his hand. When she tried to leave the home while holding C.B., the paramour "grabbed" her and brought her back inside the

11

residence. Through an unspecified act of domestic violence two years earlier, the mother believed she was harmed to the point of losing consciousness. The mother permitted a Department worker to listen to a recorded telephone message containing a threat to the mother's life by the paramour.

The affidavit portrays a volatile home environment and behavior by the mother and her paramour capable of resulting in abuse or neglect of a two-year-old child, but § 161.001(1)(O) requires actual occurrence of abuse or neglect to justify termination of parental rights. *See In re H.S.V.,* 04-12-0150-CV, 2012 Tex. App. Lexis 5470, at *9; *In re S.A.P.,* 169 S.W.3d 685, 705-06 (Tex.App.--Waco 2005, no pet.) (evidence child was removed on risk of abuse or neglect because of parents' history was legally insufficient). *But see In re M.L.J.,* No. 02-07-0178-CV, 2008 Tex. App. Lexis 3218, at *14-18 (Tex.App.--Fort Worth May 1, 2008, pet. denied) (mem. op.) (apparently concluding evidence of risk or fear of abuse or neglect sufficiently satisfied requirement of § 161.001(1)(O)). While the affidavit may have been sufficient to support the trial court's order under § 261.201(b)(1), it does not provide sufficient evidence to show by the clear and convincing standard that C.B. was removed from the mother under Chapter 262 for abuse or neglect. *See Mann,* 2009 Tex. App. Lexis 7326, at *17 (noting abusive conduct of parent toward sibling of child made subject of termination proceeding may have provided reason to remove subject child under Chapter 262, but was not evidence that subject child "actually sustained abuse or neglect" by parent).

We find the evidence, viewed in the light most favorable to the trial court's judgment, was not such as would permit a reasonable trier of fact to form a firm belief or conviction that C.B. was removed from the mother under Chapter 262 for the abuse or

neglect of C.B, and was thus legally insufficient. It is therefore unnecessary to consider the mother's factual insufficiency complaint. Tex. R. App. P. 47.1.

The trial court also appointed the Department permanent managing conservator of C.B. The mother does not challenge this determination on appeal. We therefore will affirm the judgment's appointment of the Department as permanent managing conservator of C.B. *See Mann,* 2009 Tex. App. Lexis 7326, at \*40 (citing *Earvin v. Dep't of Family & Protective Servs.,* 229 S.W.3d 345, 351 (Tex.App.--Houston [1st Dist.] 2007, no pet.); *In re J.A.J.,* 243 S.W.3d 611, 615-17 (Tex. 2007); *In re J.F.C.,* 96 S.W.3d at 266.

## Conclusion

The portion of the judgment terminating the parent-child relationship between the mother and C.B. is reversed, and judgment is rendered denying the request of the Department for termination of the parent-child relationship between the mother and C.B. The judgment of the trial court is otherwise affirmed.

James T. Campbell
Justice