# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00539-CV

S. N., Sr., Appellant

v.

Texas Department of Family and Protective Services, Appellee

FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 291,045-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Sam,[1] the children's father, appeals from the trial court's order appointing Christine, the mother, as managing conservator for their sons—Stan, born in August 1999,[2] Kevin, born in April 2003, and Victor, born in November 2008—and from a protective order barring him from having contact with Christine or the boys. We will affirm the trial court's order relating to conservatorship, including its restrictions on Sam's visitation with, access to, and contact with his sons.[3] However, as explained below, we will vacate the trial court's protective order.

---

[1] For purposes of both clarity and privacy, we will use pseudonyms for the parties involved. *See* Tex. R. App. P. 9.8.

[2] While the underlying case was pending, Stan turned eighteen.

[3] The conservatorship order restricts Sam from having visitation with or access to his sons and enjoins him from coming within 200 yards of Christine or the boys, Christine's property, Christine's place of work, or the children's schools.

## Factual and Procedural Background

In March 2017, the Texas Department of Family and Protective Services filed a petition seeking temporary conservatorship of the children. The Department alleged that while the children were in Sam's care, they were subjected to neglectful supervision and were witnesses to an incident of domestic violence against Sam by his girlfriend, Claire. The Department also alleged that Sam and Claire had tested positive for methamphetamine and amphetamine. The Department asserted that during an argument between Sam and Claire, Claire started to enter the children's room. As Sam attempted to push her out of the room, Claire threw her purse at Sam, cutting him on the face, and then scratched and fought with him. Sam called Christine to get the children, but when Christine arrived, Claire grabbed onto the youngest child, Victor, to keep him from leaving. In later interviews, Victor told a Department caseworker that he was frightened during the confrontation, Kevin said he was scared of Claire, and Stan said he gets frightened when Sam gets angry.

The children were removed from Sam's care and soon placed with Christine. During the pendency of the underlying proceeding, Christine filed a motion to enforce the trial court's earlier temporary injunction, asserting that Sam, in violation of that order, had come to her house to leave gifts for the children, continued to contact his sons online, and continued to coordinate visits with the oldest child, Stan. In addition to seeking to enforce the injunction, Christine also sought and obtained an emergency protective order against Sam.

In the Department's final report to the court, it recommended that Christine be named sole managing conservator. The Department also recommended that Sam's parental rights be terminated, but later dropped that recommendation. After an evidentiary hearing held in August

2

2017, an associate judge signed an order appointing Christine as sole managing conservator. Sam then requested a de novo hearing before the referring judge. *See* Tex. Fam. Code § 201.015. The de novo hearing was held over three days in December 2017, February 2018, and May 2018. Neither Sam nor Duane Graeff, the attorney Sam had hired, appeared for the May hearing. In early June, Sam sent the trial court a letter requesting a court-appointed attorney, explaining that Graeff was "unable to complete my case, to the best of his abilities, due to his relocation of offices, and personal business."

On July 24, the trial court signed its order appointing Christine as sole managing conservator, refusing to appoint Sam as a possessory conservator, and ordering that he have no visitation or contact with the children. The order enjoined Sam from coming within 200 yards of Christine or the children, ordered him to pay $336 in child support each month, and found him in child-support arrears in the amount of $1680. Additionally, the court signed a Final Protective Order barring Sam from threatening or harassing Christine or the children; communicating with them other than through his attorney; going near their residences, schools, or places of business; or removing the boys from Christine's possession. Although the orders do not address Sam's request for a court-appointed attorney, the trial court's docket sheet stated that on July 24, the court "grants Graeff's mtn to w/draw & appoints [Bradley] Williamson as atty for dad." Williamson filed a motion for new trial on Sam's behalf, but the motion does not present any specific grounds for that request.[4]

---

[4] The motion states in its entirety, "COMES NOW Respondent-[Father], [Sam], in the above cause and by his attorney and files this motion for new trial pursuant to rule 329b(b) of the Texas Rules of Civil Procedure."

On appeal, Sam asserts in two issues that he received ineffective assistance of counsel and that the evidence is insufficient to support the protective order.

## Ineffective Assistance

The supreme court has stated that "parental rights are of constitutional magnitude," although not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "In Texas, there is a statutory right to counsel for indigent persons in parental-rights termination cases," including the right to effective counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). However, the right to effective assistance has not been extended to non-termination cases involving questions of conservatorship or other custody disputes. *See, e.g.*, *Pirzada v. Rice*, No. 02-14-00145-CV, 2015 WL 1743461, at *2 (Tex. App.—Fort Worth Apr. 16, 2015, no pet.) (mem. op.); *In re G.J.P.*, 314 S.W.3d 217, 223 (Tex. App.—Texarkana 2010, pet. denied). As the court in *In re G.J.P.* explained, the reason Texas has extended the right to effective counsel in termination cases is that termination seeks to permanently sever the parent-child relationship—a relationship that, as noted earlier, is of constitutional magnitude—while a conservatorship decision may be modified if circumstances change. 314 S.W.3d at 223.

Although the Department initially sought to terminate Sam's parental rights, by the time the case reached the de novo hearing, the Department no longer sought termination and instead sought to ensure that Christine was appointed as sole managing conservator. In its opening statement on the second day of the de novo hearing, the Department stated:

> The Department, we're still seeking to be dismissed. We just want the mother to be sole managing conservator. And, frankly, we're going to be asking that the judge—your Honor to do more restrictive terms on the father than the judge previously ordered given his behavior during the pendency of this case, you know.

4

On the final day of the de novo hearing, the trial court discussed the issues before it, saying that the hearing had not reached issues related to the protective order yet and that they were "only dealing with the final hearing on termination . . . and appointment of managing conservators." The court asked, "I think the only issue before the Court is whether Dad is terminated. Is that right?" The Department answered, "Well, the [associate] judge actually did not terminate the dad's rights . . . but he appealed anyway." The trial court said that Sam had appealed "[a]s to whether he has no designation and, I assume, has limited rights," and the Department noted that the associate judge had signed an injunction against Sam requiring him to go to counseling and that Sam "didn't like that." The trial court asked the Department if the Department wanted the trial court to adopt the associate judge's order, and the Department said:

> We're not asking you to terminate his rights, but we are asking that you restrict any access he has with several of these kids until, you know, he at least has a year of sobriety. You know, I mean, I can get into it in closing argument, but—or you can ask the caseworker what he thinks, but [Sam has] pretty much indicated he's going to refuse to follow anything the Court orders anyway.

Several of our sister courts have confronted a similar situation and have concluded that a claim of ineffective assistance cannot be raised when the parent's rights are not terminated and instead the case resolves only issues of conservatorship. *See In re A.B.*, 548 S.W.3d 81, 84 (Tex. App.—Beaumont 2018, no pet.) (ineffective-assistance claim could not be considered when Department initially sought termination, but jury was asked only who should be managing conservator); *In re W.H.M.*, No. 01-00-01396-CV, 2003 WL 22254713, at *12 (Tex. App.—Houston [1st Dist.] Oct. 2, 2003, pet. denied) (mem. op.) (ineffective-assistance claim could not be considered

when Department initially sought termination of father's rights, but termination was not sought at trial and jury was asked only about conservatorship); *see also Pirzada*, 2015 WL 1743461, at *2-3 (Department intervened in divorce proceeding after mother alleged threatening behavior by father and initially sought termination of father's rights, but after mother was named temporary managing conservator, Department was removed as temporary conservator and did not appear at final trial; court held that right to effective assistance did not extend to case and noted that when Department was removed, Department's termination "suit was concluded"); *G.J.P.*, 314 S.W.3d at 223 (after father was accused of murdering wife and one child, grandparents were named conservators of surviving children; court held, "As this case has evolved, it is a conservatorship case to which this extra-constitutional protection does not apply."). We agree. Because the Department abandoned its request for termination of Sam's parental rights, the right to effective assistance of counsel did not extend to the de novo hearing that resulted in the conservatorship order and protective order. We overrule Sam's first issue.

**Sufficiency of the Evidence**

In his second issue, Sam argues that the evidence is insufficient to support the final family violence protective order, which was issued separately by the trial court in addition to the conservatorship order.[5] Sam argues that there was no evidence of any act or threat by him against Christine or the children that was intended to cause harm or that reasonably placed Christine or the children in fear of imminent harm.

---

[5] As noted earlier, the conservatorship order has provisions enjoining Sam from coming within 200 yards of Christine and the children.

We review the sufficiency of the evidence in a bench trial under the same standards used following a jury verdict. *B.C. v. Rhodes*, 116 S.W.3d 878, 883 (Tex. App.—Austin 2003, no pet.). In reviewing legal sufficiency, we consider the evidence in the light most favorable to the trial court's determination, indulging every inference in favor of that determination, and in reviewing factual sufficiency, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Id*. at 883-84. The trial court is the sole judge of witness credibility and the weight to be given the testimony, and we will not substitute our judgment for that of the trial court merely because we might reach a different conclusion. *Id*. at 884.

"A court shall render a protective order as provided by Section 85.001(b) if the court finds that family violence has occurred and is likely to occur in the future." Tex. Fam. Code § 81.001. "At the close of a hearing on an application for a protective order, the court shall find whether" family violence has occurred and is likely to occur in the future. *See id*. § 85.001 ("Required Findings and Orders"). "Family violence," as relevant here, is defined as:

> (1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself;
>
> (2) abuse, as that term is defined by Sections 261.001(1)(C), (E), (G), (H), (I), (J), (K), and (M), by a member of a family or household toward a child of the family or household.

*Id*. § 71.004. The relevant specified subsection of Section 261.001 further defines "abuse" as:

7

(I) the current use by a person of a controlled substance as defined by Chapter 481, Health and Safety Code, in a manner or to the extent that the use results in physical, mental, or emotional injury to a child.

*Id.* § 261.001(1)(I).

In support of the protective order, the trial court found that "family violence has occurred[,] that family violence is likely to occur in the future," and that Sam had committed family violence. It is the evidentiary support for those findings that we must review. Reviewing the evidence before the trial court that supports the protective order, the record reflects that the Department initially got involved with the family after the altercation between Sam and his girlfriend Claire in which Sam was injured and during which Claire grabbed Victor's arm. After the incident, Claire and Sam tested positive for methamphetamine. Sam did not take hair follicle or nail tests throughout the proceeding, although he took a urinalysis test shortly before the February hearing date, and those results were negative.

Christine testified that she was seeking a protective order because she had seen the effects drugs have had "on people in the past" and was therefore afraid for Sam to be around the boys because "I don't ever know what's going to happen." Asked whether she feared her sons would be in danger if they went with Sam, she answered, "I do." She also said that Sam had come to her property in violation of a temporary restraining order, once leaving gifts for the children and once parking outside the boundary of the restraining order and sending Stan, who had turned eighteen, to ask if the younger boys could come out and see Sam. She said that it had been "an ongoing struggle" trying to keep the children away from Sam, that he had contacted them through Facebook and their cell phones, and that in April 2018, he met Kevin and Stan at Kevin's high school during the lunch

8

period. Christine testified that Sam had told the boys to delete messages between them and Sam and to lie about having had contact with Sam. That behavior, she said, made it hard to establish trust between her and her sons, and she was concerned about Sam instructing the boys to be dishonest.

Sam testified and admitted to the incident with Claire that instigated the Department's involvement and said that it was "just a dumb argument over probably nothing." He said the children were never in danger and explained that he told the boys to call Christine to come get them. Sam testified that this was the only incident of violence between him and Claire. He further testified that he never threatened or hurt Christine or the children and that Christine had agreed with that fact in an earlier hearing. He agreed that he had missed various court dates but asserted that sometimes he "didn't know when to come" or was unable to attend because of a job. Sam admitted to seeing his children in violation of the court's temporary orders. He also testified that he had not seen his youngest two boys in about a year. Sam testified that he was a loving father and that he had a good relationship with his sons.

Sam testified that the initial positive methamphetamine test was false and that he last used methamphetamine more than five or six years ago. However, he admitted that he refused to take a court-ordered hair-follicle drug test and never took a nail test offered as an alternative and acknowledged that those missed tests could support an assumption that he was choosing drugs over his sons. He testified that a urinalysis test taken two weeks before the February hearing showed no drug use. Sam testified that he had started to use a cane during the proceeding and explained that he needed it because of "a bad sciatic and a bum knee and a bad back."

9

A Department caseworker testified that Christine was attempting to protect her children and was "having a little bit of a hard time because of the father's just absolute refusal to follow the Court's orders." The Department supported the associate judge's recommendations, including injunctions barring Sam from coming near Christine and the children. The Department argued that "this case started out with domestic violence" and that "another way that children are abused and neglected is to—through continuous drug use by a parent." It argued that the protective order was appropriate under Section 260.001(1)(I), which provides that a parent whose drug use rises to the level of having an effect on his child can be determined to have committed abuse. Asked by the trial court about any evidence about whether Sam was "actually using illegal drugs now," the Department's attorney could only point to the positive drug test at the inception of the case and Sam's failure to take drug tests throughout the proceeding. The Department referred to Sam's use of a cane and asserted that his drug use was causing "his continued physical decline because he apparently is now having difficulty walking and things of that nature."

The evidence establishes that Claire and Sam, while under the influence of methamphetamine, once had a physical argument in the presence of the children during which Claire hit Sam with a purse and grabbed onto Victor's arm. Throughout the pendency of the case, Sam neglected or even refused to take drug tests, resulting in Sam being denied visitation. The trial court could reasonably infer from that behavior that Sam was continuing to use illegal drugs. *See In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *In re J.T.G.*, 121 S.W.3d 117, 131 (Tex. App.—Fort Worth 2003, no pet.).

However, although a parent's use of a controlled substance may rise to the level of "abuse" sufficient to support a protective order if it harms his child, *see* Tex. Fam. Code §§ 71.004, 81.001, 261.001(1)(I), the evidence here is legally and factually insufficient to show that Sam's alleged ongoing drug use had harmed or was harming his children. *Compare In re C.B.*, 376 S.W.3d 244, 250 (Tex. App.—Amarillo 2012, no pet.) ("The record before us contains little evidence of C.B.'s physical, mental or emotional condition. We see no basis on which the court could have determined that the mother's drug use resulted in injury to C.B."), *abrogated on other grounds by In re E.C.R.*, 402 S.W.3d 239 (Tex. 2013), *with In re P.D.*, No. 06-14-00052-CV, 2014 WL 5465872, at *5 (Tex. App.—Texarkana Oct. 29, 2014, no pet.) (mem. op.) (holding that mother's drug use, combined with escalating altercations between mother and grandmother and mother's allowing drug users and people with criminal histories into home when children were present, "created an environment that placed the children at risk of emotional and physical harm"). For instance, there was no evidence, such as from the children's caseworker or a psychologist or therapist, about how Sam's ongoing drug use had affected the children.

Further, although a history or pattern of family violence may support a finding that violence is likely to occur in the future, *see, e.g.*, *Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex. App.—Houston [14th Dist.] 2010, pet. denied), the record reflects that the incident of domestic violence that precipitated this proceeding was a one-time altercation in which Sam's girlfriend was violent against Sam, and there was no evidence that Sam was violent in that altercation or at any other time. The history of domestic violence relied on by the trial court—a single altercation in which Sam was not the aggressor—cannot support a finding that family violence is likely to occur

11

in the future. *See In re J.A.T.*, No. 13-04-00477-CV, 2005 WL 1981497, at *1 (Tex. App.—Corpus Christi Aug. 18, 2005, no pet.) (mem. op.).

There was no evidence that Sam had been violent to or had directed threats at Christine or his sons. Nor was there evidence that his use of illegal drugs had resulted in physical, mental, or emotional injury to the boys or was likely to do so in the future. Thus, we can only conclude that the evidence was insufficient to support the trial court's findings of fact related to the protective order, especially in light of the provisions of the conservatorship order restricting Sam from coming within 200 yards of Christine and the boys. We sustain Sam's second issue on appeal.

## Conclusion

We have overruled Sam's first issue on appeal and sustained his second issue. We therefore affirm the trial court's conservatorship order. We vacate the trial court's protective order.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Triana and Kelly

Affirmed in Part; Vacated in Part

Filed: February 7, 2019