**Opinion issued December 21, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00584-CV

————————————

## IN THE INTEREST OF K.N.D., A CHILD

———————————————————

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-03002 J**

———————————————————

## DISSENTING OPINION

I respectfully dissent from the panel's opinion, which reverses the trial court's termination of appellant A.D.'s parental rights to her minor child, K.N.D. The panel concludes that the evidence was legally insufficient to support the termination of A.D.'s parental rights under Texas Family Code section

161.001(1)(O).[1] In my view, the majority misconstrues the plain language of the Family Code, misapplies the standard of proof, and erroneously refuses to consider major portions of the record evidence material to the proper disposition of this case. I would apply the standard of proof required by the legislature in the Family Code and by the supreme court of this state, and I would hold that the evidence is legally and factually sufficient to support the termination of A.D.'s parental rights based on the plain meaning and historical construction of subsection 161.001(1)(O) and the trial court's findings that A.D. violated Family Code subsection 161.001(1)(O) and that termination of her parental rights was in K.N.D.'s best interest. I agree with the panel opinion to the extent that it holds that the evidence was sufficient to support the trial court's appointment of the Texas Department of Family and Protective Services ("DFPS") as sole managing conservator of K.N.D.

**Background**

I include the following fact section to supplement the facts recited by the majority.

A.D.'s first child, S.L.A.D., was removed from her care after reported incidents of medical neglect and neglectful supervision. DFPS provided A.D. with a Family Service Plan at that time, but she did not complete it. A.D. eventually agreed that she could not adequately care for S.L.A.D. and voluntarily relinquished

---

[1] *See* TEX. FAM. CODE ANN. § 161.001(1)(O) (Vernon Supp. 2012).

2

her parental rights to S.L.A.D. The trial court held the hearing terminating A.D.'s parental rights to S.L.A.D. on April 19, 2011, while A.D. was pregnant with K.N.D., the child who is the subject of this appeal. The trial court signed the decree terminating A.D.'s rights to S.L.A.D. on May 5, 2011, after K.N.D.'s birth.

Less than two weeks after the hearing terminating her rights to S.L.A.D, but before the trial court entered the decree of termination regarding S.L.A.D., when A.D. was thirty-seven weeks pregnant with K.N.D., A.D. was involved in a violent encounter with a man who was either her roommate or her pimp. A.D. was taken to the hospital as a result of this violence, where she gave birth to K.N.D. on April 28, 2011.

On April 29, 2011, the day after K.N.D.'s birth, according to caseworker Candice Chandler, DFPS "received a referral concerning the Neglectful Supervision of [K.N.D.] by her mother, [A.D.]." Chandler completed an investigation, and on May 3, 2011, while K.N.D. was still in the hospital, DFPS filed its "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship" in the same trial court that was considering termination of A.D.'s rights to S.L.A.D.

DFPS filed the affidavit of Candice Chandler in support of its petition. Chandler averred that, on April 29, 2011, DFPS "received a referral concerning the Neglectful Supervision of [K.N.D.] by her mother, [A.D.]." The affidavit provided

3

that A.D., "while 37 weeks pregnant, was involved in a domestic dispute with her two roommates resulting in her falling down and going to the hospital." Chandler further stated,

> Reportedly, the female roommate came to the hospital and informed a nurse that both she and [A.D.] were prostitutes and the male roommate was their pimp. It was reported that [A.D.] has a history with the agency where her first child, [S.L.A.D.], was placed for adoption because she could not care for the child.

Chandler recounted her investigation of the report, stating that she made face-to-face contact with A.D. on May 2, 2011. A.D. told Chandler that the male roommate was just a roommate and that he had brought the other female to the apartment "a few weeks ago." According to A.D., she was not involved in the physical altercation between her two roommates, and, instead, "she felt dizzy and fell down." A.D. reported that she was being supported financially by K.N.D.'s biological father, who resided in Florida, that she had given up her first daughter, S.L.A.D., for adoption because she was not stable enough at that time to care for her, but that at the time of the interview on May 2, 2011, three days before the trial court entered the order terminating her rights to S.L.A.D., she had an apartment and the means to care for K.N.D.

Chandler also spoke with the hospital social worker, Betty Fortson. According to Fortson, A.D. reported that "she was being chased by the male roommate and he stepped on her house shoe which caused her to fall," and A.D.

4

"was being supported by the female roommate but did not mention in what capacity exactly."

Chandler continued her investigation by speaking to the "apartment worker, Matilda," about her account of the altercation. Matilda reported that A.D. came to the apartment office and asked how she could have someone removed from her apartment. When A.D. saw the male roommate approaching the office, she left through the side door. Matilda saw the man chase A.D., and A.D. fell while the man was chasing her, so Matilda called the police. Matilda also stated that "at some point, the male roommate kicked [A.D.'s] door in because apartment management had to have the locks changed." The male roommate "was escorted off the premises by the police and [A.D.] was taken to the hospital via ambulance." A.D. then called the apartment office the following day and gave permission for the male roommate to have a key to the apartment.

Finally, Chandler spoke with the case worker assigned to S.L.A.D.'s case, Jasmin Green. Green was not aware that A.D. was pregnant and thought that A.D. was "a flight risk." Green related that A.D. "will say that she will comply with agency recommendations, but then will not make herself available once it is time to work the services." A.D. had "mental health issues and has not received any treatment yet." The affidavit also recounted A.D.'s history with child protective services ("CPS"), including incidents of "medical neglect" and "neglectful

5

supervision" of S.L.A.D. that resulted in termination of A.D.'s parental rights to S.L.A.D. at a hearing on April 19, 2011, i.e., nine days before K.N.D.'s birth. Chandler also averred that A.D. had "an assault charge from 2009."

The affidavit stated that DFPS sought conservatorship of K.N.D. "[d]ue to concerns for the home environment, including but not limited to the domestic violence in the home, along with [A.D.'s] prior unwillingness to work services with the agency." Chandler also cited the "instability of the home environment and [A.D.] as a caregiver," and stated that "[t]here is a concern for [A.D.'s] being a flight risk. There is prior CPS history where she has moved before the investigation could be completed and subsequent CPS history has been validated warranting the removal of her other daughter [S.L.A.D.]."

That same day, May 3, 2011, the trial court entered its "Order for Protection of a Child in an Emergency" and appointed a guardian ad litem for K.N.D.

On June 30, 2011, the trial court held a status hearing, and DFPS filed a Family Service Plan listing specific requirements for A.D. to complete in order to regain custody of K.N.D. The trial court held additional status hearings in October 2011 and February 2012.

A year after the trial court entered the emergency order, on May 1, 2012, the trial court held the bench trial on the termination of A.D.'s parental rights to

6

K.N.D., and A.D. appeared through her attorney but did not appear in person.[2]

DFPS filed its permanency plan and progress report, which provided that K.N.D.'s foster parents were willing to adopt her. The report also provided that A.D. had completed her psychological assessment and individual counseling. It stated that A.D. had informed DFPS that she was taking GED classes and parenting classes but that she did not provide verification to DFPS. It further stated:

> [A.D.] has obtained employment with Debok Home Healthcare where she is employed as a home health provider. [A.D.] provided case worker with a pay stub for April 2012. In regards to [A.D.] seeking assistance for her past mental health diagnosis she completed a self-reported screening at [the Mental Health and Mental Retardation Authority of Harris County ("MHMRA")] and was told that she does not meet the criteria for assistance. Case worker has made a referral for [A.D.] to have a psychiatric evaluation completed. [A.D.] continues to be without stable housing at this time. She continues to obtain residence with various partners without any consideration for safety. She has not been able to demonstrate the knowledge acquired in her parenting classes as she often has to be prompted to attend to her child's basic needs, such [as] checking and changing the child's diaper. Her past history along with her current lack of permanent residence is of great concern as it previously resulted in her first born being removed from her care for medical neglect.

The only witness at the trial was Jasmin Green, the case worker for both S.L.A.D. and K.N.D. Green testified that A.D.'s rights to S.L.A.D. were terminated when A.D. relinquished her rights "just before trial started on that case." Green testified that "a lady claiming to be a prostitute" came to the hospital

---

[2] Green, the case worker, testified that A.D. was present at the hearing when the trial court set the hearing for trial on May 1, 2012, and that the attorney for DFPS "told everybody in front of [the trial court that] this would be on May the 1st."

7

while A.D. was giving birth to K.N.D. and told the investigator and the hospital social worker that A.D. was a prostitute and that they had gotten into a fight with a pimp. She testified that A.D. claimed at the time that she had fought with a roommate and was injured when she fell down. Given the inconsistencies in the stories, DFPS investigated further by talking to the apartment manager of the complex where the events occurred. DFPS learned that the person A.D. represented as a roommate was not on the lease. The apartment manager saw this man chase A.D. in the parking lot and saw him "stomping on [A.D.]—hitting [A.D.]"

Green testified that, in both the prior case involving S.L.A.D. and the present case involving K.N.D., there were instances of domestic violence. Green stated that A.D. did not have stable living conditions or stable employment, which was a concern of DFPS in both cases. Green specified that the only proof of employment ever received by DFPS was an "intent to hire letter stating that [A.D.] would be employed by a credit counseling service" and then a pay stub reflecting that A.D. had been paid forty dollars by a home health care service. Green testified that A.D.'s Family Service Plan required her to maintain stable employment. Green stated that A.D. was not able to support K.N.D.

Green testified that A.D. was required to take domestic-violence counseling because "she has a history of taking up with shiftless, marginal or criminal men."

8

She stated that A.D. had "been involved with at least two men during the course of this case." A.D. was also required to do a psychiatric evaluation. She went to MHMRA and provided a form to DFPS stating that she did not qualify for services at that time. Green also testified that A.D. was supposed to complete her GED, but she never provided any evidence that she tried to do so. Green stated that while A.D. did take parenting classes, her visits with K.N.D. were not "appropriate." She testified that during those visits, A.D. "attempts to bond with her child. She'll play with her, but she does not meet her basic needs such as diapering, feeding. She has to be prompted to do those things." Green also testified regarding a previous incident in which S.L.A.D. had "an emergency condition and abscess, an injury that required surgery on the brain," but A.D. was unavailable to give consent because "she had gone to Florida in 2009 and didn't come back until sometime in 2010."

Green testified that she believed termination of A.D.'s parental rights was in K.N.D.'s best interest and that DFPS's goal was to have K.N.D. adopted. Green testified that "the domestic violence, the fight, whether he was a pimp or a roommate or whatever, endangered the child." She further testified that DFPS was concerned that "these behaviors have been going on for a long time, particularly with the men, not having a job, and et cetera, that it could endanger [K.N.D.]."

9

On cross-examination, Green testified that when she spoke to A.D. a month before the trial A.D. did not verbally express any interest in having K.N.D. returned. Green testified that A.D. told her that "she just became employed working part time at a home health care firm and she's currently residing with a gentleman that she's known for about six months." Green conceded that the child was not physically injured by A.D.'s actions.

K.N.D.'s guardian ad litem also questioned Green. Green again testified that "the violence going on either with the pimp, boyfriend or friend in [A.D.'s] apartment" would endanger the child. Green believed that A.D. had "gone through the family service plan somewhat" but not "sufficiently enough to set aside the potential endangerment of placing this child back with her." Green testified that DFPS intended to place K.N.D. for adoption with her current foster family, which was the same family that had adopted her sibling, S.L.A.D. Green stated that K.N.D. had bonded with her sister and the caretaker, and the foster family was willing to adopt her. Green believed adoption by the foster family was in K.N.D.'s best interest.

DFPS also presented several exhibits at trial, which were admitted without objection,[3] including: (1) the "Interlocutory Decree for Termination" of A.D.'s

---

[3] A.D.'s attorney objected to DFPS's exhibit 8, which was a record of the 2009 arrest for assault, which had later been dismissed. The trial court sustained the objection.

rights to S.L.A.D. and the final decree terminating A.D.'s rights to S.L.A.D. following her voluntary relinquishment of parental rights; (2) the Family Service Plan for K.N.D.'s case and other orders relating to the plan; (3) an order requiring A.D. to remain in the courtroom in order to take a drug test, which, according to DFPS's attorney, she "didn't stick around for"; and (4) documents regarding a prostitution arrest in Florida showing that A.D. paid the assessed fine.

DFPS sought termination of A.D.'s parental rights to K.N.D. under Family Code subsections 161.001(1)(D), 161.001(1)(E), and 161.001(1)(O). The trial court stated on the record, "As far as I understand, [A.D.] did not complete her Court ordered service. . . ." A.D. did not challenge the trial court's statement regarding the court ordered service plan.

The trial court rendered its decree for termination on June 5, 2012. It terminated A.D.'s parental rights to K.N.D., finding "by clear and convincing evidence" that termination was in K.N.D.'s best interest and that A.D. had "failed to comply with the provisions of a court order that specifically established the actions necessary for [her] to obtain the return of this child . . . pursuant to §161.001(1)(O), Texas Family Code." It further found that appointment of A.D. as K.N.D.'s managing conservator was not in K.N.D.'s best interest, and it appointed DFPS as the sole managing conservator. The trial court did not make any findings under subsections 161.001(1)(D) or (E).

11

A.D. moved for a new trial, arguing that the evidence was legally and factually insufficient to support the trial court's conclusion that A.D. "failed to comply with 161.001(1)(O), Texas Family Code." A.D. provided an affidavit with her motion for new trial in which she averred, "I am employed, have housing, took my parenting class, submitted myself to MHMRA as directed by CPS and they rejected me, and visited with my child." The trial court denied the motion for new trial and this appeal followed.

## Sufficiency of the Evidence Supporting Termination

The panel majority concludes that "the record evidence is legally insufficient to clearly and convincingly establish that the child was removed from her mother 'under Chapter 262 for the abuse or neglect of the child,' as is required to support termination under the sole ground found by the trial court, section 161.001(1)(O)." Slip Op. at 2. Other than the fact that "A.D. was a prostitute who was physically abused by her pimp on one occasion," the majority finds no evidence in the record material to its decision. Slip Op. at 16.

I disagree with the majority's recitation of the relevant evidence and its application of the standard of proof. I would hold that the evidence was legally and factually sufficient to support termination of A.D.'s parental rights to K.N.D.

12

**A.** **Sufficiency of Evidence for Termination Under Subsection 161.001(1)(O)**

In a case to terminate parental rights brought by DFPS under section 161.001, DFPS must establish, by clear and convincing evidence, (1) that the parent committed one or more of the enumerated acts or omissions justifying termination and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. §161.001 (Vernon Supp. 2012); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

The trial court terminated A.D.'s parental rights to K.N.D. under subsection 161.001(1)(O). This subsection provides that a court may involuntarily terminate a parent's rights to her child if the parent has

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [DFPS] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

13

TEX. FAM. CODE ANN. § 161.001(1)(O).

A.D. does not dispute that K.N.D. was in DFPS's conservatorship for at least nine months, nor does she dispute that she failed to comply with the provisions of her Family Service Plan as adopted by the trial court in its May 17, 2011 order. Rather, A.D. argues—and the majority agrees—that the evidence is insufficient to show that K.N.D. was initially removed from her due to "abuse or neglect" under Family Code Chapter 262 and that this evidentiary insufficiency requires reversal of the trial court's judgment terminating A.D.'s rights to K.N.D.

The majority states, "[A]ssuming all facts that reasonably could have been found by the trial court in support of its conclusion that removal had occurred 'for the abuse or neglect of the child,' the fact that A.D. was a prostitute who was physically abused by her pimp on one occasion is legally insufficient to establish that A.D. abused or neglected her unborn child, or that the subsequent removal of the child occurred because of such abuse or neglect." Slip Op. at 16. First, this is not the case, as shown by the recitation of the record above. Second, DFPS produced clear and convincing evidence of A.D.'s abusive and neglectful behavior that endangered both K.N.D. and her sibling S.L.A.D. and that had not been corrected at the time of the termination trial in compliance with her court-ordered Family Service Plan, and DFPS also produced clear and convincing evidence that it was in K.N.D.'s best interest that A.D.'s parental rights be terminated.

14

At trial, DFPS presented evidence that A.D. was involved in prostitution—a criminal activity—in the form of the initial report made to DFPS, in which a woman told DFPS that she and A.D. were prostitutes and that A.D. had been in a violent fight with their pimp, and in the form of A.D.'s March 2010 citation in Florida for prostitution. Criminal conduct on the part of a parent exposes a child to substantial risk of harm. *See Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ) (stating that past criminal conduct, before and after birth, is relevant to showing of inability to parent).

DFPS further presented the testimony of Jasmin Green, A.D.'s caseworker, that A.D. had a history of dating unsuitable men who posed a danger to her child. Green also recounted the events leading to DFPS's investigation of A.D.'s ability to parent K.N.D. A.D. was injured in an altercation with her roommate or pimp while she was thirty-seven weeks pregnant, which endangered K.N.D. The violence A.D. was involved with immediately prior to K.N.D.'s birth did more than threaten "metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Human Servs. V. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). It exposed K.N.D. to loss or injury. *See id.*; *see also Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("'To endanger' means to expose a child to loss or injury or to jeopardize a child's emotional or physical health."); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—

15

Fort Worth 2003, no pet.) (holding that abusive or violent conduct by a parent or other resident of the child's home supports conclusion that child's surroundings endanger his physical or emotional well-being).

Green also testified that, both at the time K.N.D. was removed from A.D. and at trial over a year later, A.D. had no stable employment or residence and was unable to provide for K.N.D. in any meaningful way. DFPS presented evidence that A.D. had not cooperated with it during the pendency of termination proceedings relating to S.L.A.D. and did not complete the Family Service Plan for either S.L.A.D. or K.N.D. that attempted to help her gain employment and stable housing. *See* TEX. FAM. CODE ANN. § 261.001(4)(B)(iii) (Vernon Supp. 2012) (providing that neglect encompasses "the failure to provide a child with food, clothing, or shelter necessary to sustain the life or health of the child, excluding failure caused primarily by financial inability *unless relief services have been offered and refused*") (emphasis added); *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied) (subjecting child to life of uncertainty and instability endangers child's physical and emotional well-being); *In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding that our citizenry accords parental rights "only to those fit to accept the accompanying responsibilities") (quoting *A.V.*, 113 S.W.3d at 361).

16

Finally, DFPS presented evidence of A.D.'s actions of medical neglect and neglectful supervision of S.L.A.D., including an incident in which S.L.A.D. had "an emergency condition and abscess, an injury that required surgery on the brain," but A.D. was unavailable to give consent for treatment because "she had gone to Florida in 2009 and didn't come back until sometime in 2010." These facts are clearly sufficient to show convincingly that A.D. had an ongoing pattern of abusive or neglectful behavior that endangered both S.L.A.D. and K.N.D. and that she had not corrected that behavior, as required by her Family Service Plan, so that termination of her parental rights was in K.N.D.'s best interest.

The majority, however, disagrees that the evidence is legally sufficient to support termination of A.D.'s rights to K.N.D. on several grounds, each of which I would find erroneous.

First, the majority adds the requirement to subsection 161.001(1)(O) that DFPS must prove at the termination trial by clear and convincing evidence, excluding evidence from the court's prior proceedings in the case, that the parent whose rights it seeks to terminate committed specific acts of abuse or neglect directed at the specific child at the time of the initial removal that justified removal under Family Code Chapter 262. Nothing in the language of the Family Code or in the Texas Supreme Court jurisprudence construing subsection 161.001(1)(O) supports adding a hurdle to termination proceedings requiring DFPS to prove again

17

at the trial on termination that the child was actually removed from parental custody under Chapter 262 for abuse or neglect. The Code provides that proof be made at the time of the initial removal that removal was necessary because of the parent's abuse or neglect of the child and that it is in the child's best interest that she remain in the custody of DFPS for her own safety and protection. In requiring that this be proved again, long after the fact, the majority defies both the plain language of the Code and the proper construction of the Code as established by supreme court precedent.

Second, even if DFPS did have to prove again at the termination trial that the child was properly removed and placed in the custody of DFPS because of acts of abuse or neglect by the parent, the majority opinion would still be erroneous because of its constricted view of probative evidence. The majority states that the fact that the procedures outlined in Family Code Chapter 262 for the involuntary removal of an abused or neglected child were followed in this case does not imply that K.N.D. was subjected to abuse or neglect. It further states that "even if the child was subjected to abuse or neglect, that fact alone does not establish that any particular parent was responsible for such abuse or neglect." Slip Op. at 12–13.

The majority's self-constricted view of the probative evidence ignores the procedures for removal of a child as set out in the Family Code. It also ignores the records from prior proceedings in this case. The prior proceedings plainly show

18

that DFPS followed the procedures set out in Chapter 262 and obtained judicial findings at the time of removal that the removal was justified by A.D.'s neglect and abuse of K.N.D. and that it was in K.N.D.'s best interest that she remain in the custody of DFPS for her own safety. The prior proceedings further show that the court established a Family Service Plan setting out the steps necessary for A.D. to correct her behavior and to regain custody of K.N.D., which A.D. did not complete. The majority also ignores the trial court's right to take judicial notice of its own files.

The majority further restricts its conception of the probative evidence by requiring that proof of "abuse or neglect" relevant to termination under subsection 161.001(1)(O) must be limited to proof that, immediately prior to removal of the child from that parent, the specific parent whose rights are sought to be terminated committed specific acts directed at the specific child whose best interests are at issue. This requirement, however, which has been adopted by this Court in recent termination cases, directly contradicts the requirements for proof of abuse or neglect set out in Family Code Chapter 262 for use under section 161.001 and approved by the Texas Supreme Court.

In this case, the majority's severely constricted view of the probative evidence causes it to ignore entirely the material evidence introduced by DFPS at the termination trial establishing A.D.'s ongoing pattern of conduct that posed

specific threats of danger to K.N.D. should she be returned to A.D.'s custody on the ground that this behavior had not yet directly caused specifically identified harm to K.N.D.

Finally, the majority ignores all of the material evidence of abuse, neglect, and child endangerment posed by A.D.'s ongoing pattern of behavior testified to by DFPS at the termination hearing in support of its argument that A.D. had not corrected the abusive and neglectful behavior that originally endangered K.N.D. In short, it ignores A.D.'s pattern of behavior that led to imposition of her Family Service Plan for K.N.D., the evidence that she failed to complete the plan by correcting that behavior, and, thus, the evidence on which the trial court based its conclusion that termination was in K.N.D.'s best interest and that A.D.'s parental rights should be terminated.

I address each of these grounds for my dissent below.

**B.    Construction of Section 161.001(1)(O) as Requiring Proof at the Termination Hearing of Specific Acts of Abuse or Neglect Directed at the Specific Child that Justified Involuntary Removal Under Family Code Chapter 262**

In order to obtain termination of a parent's rights to a child under subsection 161.001(1)(O), the majority requires that DFPS must prove by clear and convincing evidence at the termination trial that the child was involuntarily removed from the parent's custody by DFPS for specific acts of abuse or neglect directed at that specific child. *See* Slip Op. at 13–15. The addition of this

20

requirement to the proof required to support termination under subsection 161.001(1)(O) makes no sense in light of the many safeguards in the Family Code which require proof, *at the time of removal*, that the child is abused or neglected, that removal from the parent's custody is necessary for the safety of the child, that proper procedures for removal are followed, and that it is in the best interest of the child to be taken into and remain in DFPS's custody at that time.

The majority opinion first erroneously states that, although Chapter 262 authorizes the involuntary removal of a child when "there is an immediate danger to the physical health or safety of the child," the trial court's findings justifying involuntary removal "do not necessarily imply that the removed child was subjected to abuse or neglect" or "that any particular parent was responsible for such abuse or neglect." Slip Op. at 12–13. This claim is contradicted by the language of Chapter 262, which permits involuntary removal only when the child is in immediate danger. In the context of Chapter 262, such a circumstance can only occur as a result of abuse or neglect. The record in this appeal demonstrates that DFPS followed the procedures set out in Chapter 262 to involuntarily remove K.N.D. from A.D.'s custody and that the trial court made the appropriate findings to remove K.N.D. from A.D.'s custody for abuse or neglect and to place her in the custody of DFPS. Thus, the majority's conclusion that it cannot infer that K.N.D was removed for abuse or neglect is also contradicted by the record, which fully

21

permits a rational inference that K.N.D. was removed for abuse or neglect and, indeed, logically requires that inference.

Chapter 262 sets out the procedures in a suit by a governmental entity to protect the health and safety of a child. TEX. FAM. CODE ANN. §§ 262.001–262.309 (Vernon 2008 & Supp. 2012). Section 262.101 allows a governmental entity to file a petition requesting permission to take possession of a child under certain circumstances. It provides:

> An original suit filed by a governmental entity that requests permission to take possession of a child without prior notice and a hearing must be supported by an affidavit sworn to by a person with personal knowledge and stating facts sufficient to satisfy a person of ordinary prudence and caution that:
>
> (1) there is an *immediate danger to the physical health or safety of the child or the child has been a victim of neglect* or sexual abuse and that continuation in the home would be contrary to the child's welfare;
>
> (2) there is no time, consistent with the physical health or safety of the child, for a full adversary hearing under Subchapter C; and
>
> (3) reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to prevent or eliminate the need for the removal of the child.

TEX. FAM. CODE ANN. § 262.101 (Vernon 2008) (emphasis added).

Section 262.102(a) allows a court to issue an emergency order authorizing possession of a child if it makes findings consistent with the terms of section 262.101. *Id.* § 262.102(a) (Vernon 2008) (allowing court to "issue a temporary

22

restraining order or attachment of a child in a suit brought by a governmental entity" if it finds "*immediate danger*" to physical health or safety of child, there is no time for a full adversary hearing, and reasonable efforts were made to prevent need for removal of child) (emphasis added). And section 262.104 allows an "authorized representative" of DFPS to take possession of a child without a court order in certain emergency situations, including when "there is an *immediate danger to the physical health or safety of the child*." *Id.* § 262.104(a)(1) (Vernon 2008) (emphasis added).

Regardless of whether the child was removed under section 262.102 or section 262.104, section 262.201(a) requires a full adversary hearing within fourteen days after the date the child was taken into possession by the governmental entity unless the child has already been returned to the parent. *Id.* § 262.201(a) (Vernon Supp. 2012). Section 262.201(b) then provides:

> At the conclusion of the full adversary hearing, the court shall order the return of the child to the parent . . . unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:
>
> (1) there was a *danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession* and for the child to remain in the home is contrary to the welfare of the child;
>
> (2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and

23

(3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

*Id.* § 262.201(b) (emphasis added). If the court makes the findings required by subsection (b), it must issue "an appropriate temporary order under Chapter 105"[4] and provide other information and notice not relevant here to the parents and other interested parties. *Id.* § 262.201(c).

In addition, section 262.102 provides, with respect to the removal of the child from a parent's custody:

*In determining whether there is an immediate danger to the physical health or safety of a child, the court may consider whether the child's household includes a person who has*:

(1) *abused or neglected another child* in a manner that caused serious injury to or the death of the other child; or

(2) sexually abused another child.

*Id.* § 262.102(b) (emphasis added). And, section 262.201, like section 262.102, provides that, "[i]n determining whether there is a continuing danger to the physical health or safety of the child, *the court may consider whether the household to which the child would be returned includes a person who . . . has*

---

[4]  Family Code Chapter 105 provides procedures for "Settings, Hearings, and Orders." *See* TEX. FAM. CODE ANN. §§ 105.001–105.009 (Vernon 2008). Specifically, section 105.001 outlines the requirements for temporary orders made before a final order. *Id.* § 105.001.

*abused or neglected another child* in a manner that caused serious injury to or the death of the other child." *Id.* § 262.201(d)(1) (emphasis added).

Neither Chapter 262 nor section 161.001(1)(O) specifically defines "abuse" or "neglect." *See* TEX. FAM. CODE ANN. §§ 161.001, 262.001–262.309; *In re C.B.*, 376 S.W.3d 244, 249 (Tex. App.—Amarillo 2012, no pet.). However, Chapter 261, titled "Investigation of Report of Child Abuse or Neglect," contains definitions of both terms. *See* TEX. FAM. CODE ANN. § 261.001(1), (4). Although these definitions expressly apply to Chapter 261, these definitions "inform our application of those terms under Chapter 161." *C.B.*, 376 S.W.3d at 250.

Family Code sections 261.001(1) and (4) define the terms "abuse" and "neglect" in many ways that require a showing that the child was harmed or exposed to a substantial risk of immediate harm. *See* TEX. FAM. CODE ANN. § 261.001(1), (4); *In re J.S.*, No. 01-11-00062-CV, 2011 WL 5116472, at *5 (Tex. App.—Houston [1st Dist.] Oct. 27, 2011, no pet.) (mem. op.). Specifically, section 261.001(1) defines abuse as including, among other things, "mental or emotional injury to a child that results in an observable and material impairment in the child's growth, development, or psychological functioning" and "the genuine threat of substantial harm from physical injury to the child." TEX. FAM. CODE ANN. § 261.001(1)(A), (C).

Section 261.001(4) defines neglect as including, among other things, "the leaving of a child in a situation where the child would be exposed to a substantial risk of physical or mental harm, without arranging for necessary care for the child" and "the failure to provide a child with food, clothing, or shelter necessary to sustain the life or health of the child, excluding failure caused primarily by financial inability unless relief services had been offered and refused." *Id.* § 261.001(4)(A), (B)(iii). These definitions are not exhaustive. *See* TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005) (stating that term "includes" is term of enlargement and not of exclusive enumeration); *C.B.*, 376 S.W.3d at 249 & n.10 (citing Government Code section 311.005(13) and concluding enumerated acts and omissions are not exhaustive).

In addition, Texas Supreme Court case law, through its definition of child endangerment, is instructive on what constitutes abuse or neglect under Chapters 262 and 161 of the Code. *See Boyd*, 727 S.W.2d at 533 (holding that "endanger" "means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, [but] it is not necessary that the conduct be directed at the child or that the child actually suffers injury. Rather, 'endanger' means to expose to loss or injury; to jeopardize") (internal citations omitted); *see also In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (reaffirming *Boyd*'s holding that endangering conduct is not limited to actions directed toward child).

26

Here, the evidence is clear that K.N.D. was removed from A.D.'s custody on an emergency basis under Family Code Chapter 262 due to immediate danger to her physical health or safety if she remained in A.D.'s custody. Indeed, DFPS received on the day after K.N.D.'s birth a referral concerning the Neglectful Supervision of [K.N.D.] by her mother [A.D.]" based on the altercation that resulted in K.N.D.'s birth. That initial report was followed by a DFPS investigation that revealed numerous facts supporting removal. It is also clear that, at every stage of the proceedings, the appropriate evidence was taken, and the trial court made findings and entered orders in accordance with procedures specified by the Family Code to provide for the protection and safety of K.N.D.[5]

DFPS filed a petition for protection of K.N.D., as allowed by Family Code section 262.101, on May 3, 2011, less than a week after K.N.D. was born. Caseworker Candace Chandler provided the required affidavit, detailing the

---

[5] The Texas courts have long recognized that "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one." *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003) (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 2160 (1981)). However, the child also has a substantial interest in the proceedings. *Id.* "Indeed, the Family Code's entire statutory scheme for protecting children's welfare focuses on the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. §§ 153.002, 161.001(2), 263.306(4), (5)). The statutory scheme thus comports with "[t]he public policy of this state [which] is to . . . provide a safe, stable, and nonviolent environment for the child." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting TEX. FAM. CODE ANN. § 153.001(a)(2)). Thus, although termination can result in a parent's loss of her legal relationship with the child, the primary focus is on protecting the best interest of child. *Id.*

27

incident of violence that lead to A.D.'s hospitalization, A.D.'s prior involvement with DFPS, and other concerns regarding A.D.'s ability to parent K.N.D. that were raised by Chandler's investigation. On that same day, the trial court entered an emergency order allowing DFPS to take custody of K.N.D., finding that "the child has been removed pursuant to §262.104, Texas Family Code." *See* TEX. FAM. CODE ANN. § 262.104. In this May 3, 2011 order, the trial court also made the findings required by section 262.102 for emergency removal of a child pursuant to a court order, specifically, that there was "a continuing danger to the physical health and safety of [K.N.D.] if returned to the parent" and that the "nature of the emergency and the continuing danger to the welfare of the child make efforts to allow the child to remain with or return to [A.D.] impossible or unreasonable." *See id.* § 262.102(a).

On May 17, 2011, the trial court held an adversary hearing as required by section 262.201. *See id.* § 262.201(a). Chandler and A.D appeared at this hearing, along with a "foster agency representative" and K.N.D.'s guardian ad litem. The record does not contain a transcript of this hearing. However, the trial court entered an order that same day finding that

> there is sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child; (2) the urgent need for protection required the immediate removal of the child and makes efforts to

28

eliminate or prevent the child's removal impossible or unreasonable; and (3) notwithstanding reasonable efforts to eliminate the need for the child's removal and enable the child to return home, there is a substantial risk of a continuing danger if the child is returned home.

*See id.* § 262.201(b), (c). This order named DFPS K.N.D.'s temporary managing conservator, but it did allow A.D. visitation with K.N.D. Thus, the trial court specifically found danger to K.N.D.'s physical health or safety caused by "an act or failure to act" of A.D., as "the person entitled to possession."

A.D. did not challenge these findings at the time the trial court made them or at any other time in the year that this case was pending in the trial court. At trial, she did not present an argument regarding the sufficiency of the evidence supporting the trial court's May 17, 2011 removal of K.N.D. from her custody. Nor did she object to the sufficiency of the evidence to show that K.N.D. was properly removed either at trial or in her motion for new trial.

I would conclude from this undisputed record evidence that the procedures for involuntary removal were followed in this case and that the evidence in the record was legally and factually sufficient to show that K.N.D. was properly removed from A.D.'s custody under Chapter 262 for abuse or neglect and that temporary custody of K.N.D. was properly awarded to DFPS pending A.D.'s completion of her Family Service Plan and final hearing on termination. *See D.F. v. Tex. Dep't of Family & Protective Servs.*, No. 08-12-00068-CV, 2012 WL 5463025, at *7–8 (Tex. App.—El Paso Nov. 7, 2012, no pet. h.) (holding that

29

evidence was sufficient that child was removed under Chapter 262 for "abuse or neglect" when record contained evidence that parent made no effort to contact child left at shelter and trial court made findings of immediate danger to child's physical health or safety in emergency temporary order); *In re C.M.C.*, No. 14-12-00186-CV, 2012 WL 3871359, at *4 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, no pet. h.) (mem. op) (holding, in termination of father's rights, that evidence was sufficient to support finding children were removed for abuse or neglect when previous decree reflected trial court made findings that children were removed from mother under Chapter 262 for abuse or neglect); *L.Z. v. Tex. Dep't of Family & Protective Servs.*, No. 03-12-00113-CV, 2012 WL 3629435, at *7–8 (Tex. App.—Austin Aug. 23, 2012, no pet.) (holding evidence sufficient to show child was removed under Chapter 262 for abuse or neglect when "undisputed evidence" showed Family Service Plan stated reason for involvement with family was two referrals alleging neglectful supervision and physical abuse, caseworker testified to basis of referrals, and "the record contain[ed] the trial court's temporary order following an adversary hearing, which appointed [DFPS] as temporary managing conservator and included the findings required by section 262.201 of the [F]amily [C]ode"); *In re S.N.*, 287 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (finding evidence relating to proceedings held pursuant to Chapter 262, including caseworker affidavit and trial court's order finding danger

30

to physical health and safety of children, sufficient to support trial court's finding that children were removed under Chapter 262 for neglect).[6]

## C.    Constrictions on Probative Evidence

The majority, however, disregards the record of prior proceedings before the trial court, which clearly and convincingly shows that all procedures were properly followed and that K.N.D. was removed from the custody of A.D. and placed in the custody of DFPS, by court order, for her own protection. Citing the language of section 161.001(1)(O) and a developing line of cases from this Court, discussed below, the majority holds that, to terminate A.D.'s parental rights to K.N.D. under

---

[6]    To the extent the majority would require not merely that the prior orders be entered into evidence at the termination trial but also that the underlying evidence supporting those orders be entered into evidence, I answer that it is the *appellant's* burden to bring forward a sufficient record to show the error committed by the trial court. *F.A.B. v. Dep't of Family & Protective Servs.*, 01-10-00930-CV, 2012 WL 5310024, at *6 (Tex. App.—Houston [1st Dist.] Oct. 25, 2012, no pet. h.) (mem. op.) (citing *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). A.D. did not present us with a record of the initial May 17, 2011 hearing at which the trial court made its findings supporting removal of K.N.D. under Chapter 262 for abuse or neglect. Therefore, we must presume that the evidence in the missing record supports the trial court's findings. *See, e.g.*, *Legere v. Legere*, No. 03-12-00046-CV, 2012 WL 3793164, at *4 (Tex. App.—Austin Aug. 29, 2012, no pet.) (mem. op.) (presuming that missing record support finding that husband produced required financial information and "any other finding that would support the district court's child-support determinations") (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 689 (Tex. 1990)); *In re Guardianship of Winn*, 372 S.W.3d 291, 298 (Tex. App.—Dallas 2012, no pet.) ("Without a reporter's record of the July 7, 2009 guardianship proceeding, we must presume the evidence supports the probate court's finding."); *Sandoval v. Comm'n for Lawyer Discipline*, 25 S.W.3d 720, 722 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (presuming omitted portions of record supported judgment).

subsection 161.001(1)(O), DFPS had to prove K.N.D.'s removal under "Chapter 262 for abuse and neglect" all over again at the final termination hearing. None of the evidence of prior proceedings counts toward this determination.

> The majority states,

> For section 161.001(1)(O) to apply to the removal of a child under chapter 262, the surrounding circumstances must establish that removal occurred "for the abuse or neglect of the child." The termination of parental rights pursuant to section 161.001(1)(O) can only be authorized upon clear and convincing evidence of such circumstances. *See, e.g.*, *In re A.A.A.*, 265 S.W.3d 507, 515 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The sparse record in this case did not include clear and convincing circumstances that K.N.D. was removed because she had been abused or neglected by her mother.

Slip Op. at 13–14. Not only does the majority introduce this evidentiary requirement into subsection 161.001(1)(O) termination proceedings and exclude all evidence of prior proceedings as probative, it also severely restricts the new evidence it is willing to count as evidence of abuse and neglect—again in contravention of both statutory definitions of "abuse or neglect" and supreme court precedent. A.D. argues that "the specific child in question had to have been removed from the specific parent for that specific parent's abuse or neglect of that specific child. . . . Evidence of prior abuse or neglect of a sibling does not support termination under § 161.001(1)(O)." The majority agrees and states that the only "facts that reasonably could have been found by the trial court in support of its conclusion that removal had occurred 'for the abuse or neglect of the child'" is

32

"the fact that A.D. was a prostitute who was physically abused by her pimp on one occasion. . . ." Slip Op. at 16. Finding "sparse" evidence of abuse and neglect that satisfies its criteria, and ignoring all else, it holds that DFPS failed to prove abuse or neglect of K.N.D. by clear and convincing evidence. Slip Op. at 13–14.

In making the statement that the record regarding K.N.D.'s removal for abuse or neglect is "sparse," the majority erroneously considers only (1) evidence of acts of neglect or abuse directed by A.D. specifically at K.N.D. prior to K.N.D.'s removal at birth and does not consider (2) any proof appearing in the record from prior proceedings, which was before the trial court, (3) the trial court's findings with respect to A.D. and K.N.D., or (4) any acts incorporated by statute and precedent in the concepts of "abuse," "neglect," and "endangerment" of a child. Nor does it consider any of the acts required of A.D. in her Family Service Plan to cure the abusive or neglectful circumstances found by the trial court that A.D. failed to take, thus justifying termination of her parental rights under subsection 161.001(1)(O).

It is clear that the majority construes section 161.001(1)(O) as requiring that DFPS prove by clear and convincing evidence *at the termination trial* by proof of specific acts directed by the parent at the child, and not by reference to any prior proceeding or other evidence, that K.N.D. was initially removed "under Chapter 262 for abuse or neglect"—based on its own definition of "abuse" and "neglect"—

33

and that it is pursuant to this construction of the language of subsection 161.001(1)(O) that it concludes that DFPS failed to carry its burden of proof as a matter of law. *See* TEX. FAM. CODE ANN. § 161.001(1)(O) (stating that to prove predicate act sufficient for termination under particular subsection, it must be shown that parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [DFPS] for not less than nine months *as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child*") (emphasis added).

In reaching their conclusion regarding the proper construction of subsection 161.001(1)(O), A.D. and the majority rely upon a developing line of cases from this Court to argue, in A.D.'s words, that the evidence supporting the trial court's judgment terminating her parental rights to K.N.D. under section 161.001(1)(O) "is both legally and factually insufficient because there is no evidence that DFPS was named conservator due to the Mother's abuse or neglect of K.N.D." *See In re E.C.R.*, 01-11-00791-CV, 2012 WL 897777, at *4–6 (Tex. App.—Houston [1st Dist.] Mar. 15, 2012, pet. filed); *Mann v. Dep't of Family & Protective Servs.*, 01-08-01004-CV, 2009 WL 2961396, at *6–7 (Tex. App.—Houston [1st Dist.] Sept.

17, 2009, no pet.) (mem. op.); *In re A.A.A.*, 265 S.W.3d 507, 515 (Tex. App.—

Houston [1st Dist.] 2008, pet. denied).

In a dissent from the denial of en banc reconsideration in *In re E.C.R.*, I

expressed the opinion that this Court should reconsider its previous holdings in

*A.A.A.* and *Mann* because they advance an unnatural reading of the requirements of

section 161.001(1)(O) by requiring proof that the child was removed from the

parent by DFPS under Chapter 262 for specific acts of abuse or neglect of that

particular child as a separate essential element of the proof of failure to follow a

service plan under section 161.001(1)(O). *See In re E.C.R.*, 01-11-00791-CV,

2012 WL 3637248, at *4–6 (Tex. App.—Houston [1st Dist.] Aug. 2, 2012, pet.

filed) (Keyes, J., dissenting from denial of en banc reconsideration); *E.C.R.*, 2012

WL 897777, at *3–6 (panel op.). The present case is yet another example of the

consequences arising from this faulty interpretation of subsection 161.001(1)(O).[7]

---

[7]     I recognize that other courts of appeals have, to varying degrees, followed this line
of reasoning. *See, e.g.*, *D.F. v. Tex. Dep't of Family & Protective Servs.*, No. 08-
12-00068-CV, 2012 WL 5463025, at *5 (Tex. App.—El Paso Nov. 7, 2012, no
pet. h.) (citing plain language of section 161.001(1)(O) and "a majority of other
courts of appeal which have so held" in holding that "a child's removal for 'abuse
or neglect' is a required element of Section 161.001(1)(O)"); *In re S.N.*, 287
S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that
"abuse or neglect" is required element of section 161.001(1)(O)); *In re A.A.A.*, 265
S.W.3d 507, 515 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("[B]ecause
the supreme court did not expressly hold [in *J.F.C.*] that 'removal under Chapter
262 for abuse or neglect of the child' is *not* an element of subsection
161.001(1)(O), we must adhere to the unambiguous language of the statute."); *In
re S.A.P.*, 169 S.W.3d 685, 705–06 (Tex. App.—Waco 2005, no pet.) (holding
same); *see also In re E.S.C.*, 287 S.W.3d 471, 475 (Tex. App.—Dallas 2009, pet.

I strongly disagree with the majority's construction of the requirements of subsection 161.001(1)(O), which I find contrary to the plain language of the statute, supreme court precedent, and legislative intent.

The natural reading of the unambiguous language of subsection 161.001(1)(O) is that the predicate for termination is established by proof (1) that the parent failed to comply with the provisions of a court-ordered Family Service Plan that established the actions corrective of abusive or neglectful behavior necessary for the parent to obtain the return of the child (2) whom DFPS had removed from the parent in accordance with Chapter 262, i.e., in accordance with the procedures set out in the Family Code to be followed in a suit brought by a governmental entity such as DFPS to protect the health and safety of children. *See id.*; *id.* §§ 262.001–.309. This construction is full in accord with Texas Supreme Court precedent set out in *J.F.C. See J.F.C.*, 96 S.W.3d at 266, 277–79 (providing standard of review and applying section 161.001(1)(O) by focusing on evidence indicating whether parents had complied with requirements imposed by trial court's orders and stating only that "[t]he record also conclusively establishes that

denied) (assuming without deciding that removal for "the abuse or neglect of the child" is element of subsection 161.001(1)(O)); *L.Z. v. Tex. Dep't of Family & Protective Servs.*, No. 03-12-00113-CV, 2012 WL 3629435, at *7 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (following *In re E.S.C.* in assuming without deciding this issue). These conflicts and the uncertainty they create in the law indicate to me the urgent need for the Texas Supreme Court to address again the standards of proof and of appellate review in parental termination cases.

the children were removed from their parents under Chapter 262 of the Family Code").

This construction of the statute is reinforced by the fact that, under the statutory scheme created in Chapter 262 for the removal of children by a governmental entity, the trial court must make findings following a full adversary hearing before a child can remain in DFPS custody. *See* TEX. FAM. CODE ANN. § 262.201(b). The trial court entered such an order on May 17, 2011, and, as the trier of fact, it is presumed to be aware of the orders it had previously entered in the case, and thus it did not need to have the same evidence presented again at the final hearing. *See In re J.J.C.*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("[A] trial court is presumed to 'judicially know what has previously taken place in the case' tried before it, and the parties 'are not required to prove facts that the trial court judicially knows.'") (quoting *Vahlsing, Inc. v. Mo. Pac. R.R.*, 563 S.W.2d 669, 674 (Tex. Civ. App.—Corpus Christi 1978, no writ)).

Furthermore, the majority's insertion of re-proof of the propriety of the initial removal at the termination hearing as an additional hurdle to proof that termination is proper under subsection 161.001(1)(O) leads to absurd results. The only reason A.D., or any parent, would be subjected to "a court order that specifically established the actions necessary for the parent *to obtain the return* of the child who has been in the permanent or temporary managing conservatorship

of the [DFPS]" would be if the child was "remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child." *See* TEX. FAM. CODE ANN. § 161.001(1)(O) (emphasis added); *see also id.* §§ 262.001–262.309 (providing "Procedures in Suit by Governmental Entity to Protect Health and Safety of Child"). DFPS cannot remove a child from its parent or other person entitled to possession *without* a finding by the trial court of some kind of abuse or neglect. *See id.* § 262.102 (outlining showing required to obtain emergency order authorizing possession of child), §§ 262.104, 262.106 (Vernon 2008) (allowing DFPS to take possession of child in emergency without court order but requiring hearing on or before first working day after child was taken into possession), § 262.201 (requiring full adversary hearing within fourteen days after child is taken into possession by governmental entity).

Thus, the language in subsection 161.001(1)(O) providing that it applies to a "child who has been in the permanent or temporary managing conservatorship of the [DFPS] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child" should not be interpreted to add additional evidentiary requirements to termination under this subsection; rather, this language describes the statutory—and common-sense— prerequisites to termination on the ground that the parent failed to comply with the court-ordered requirements for return of the child.

38

The result of the majority's holding in this case is that a child like K.N.D. cannot be removed at birth unless that specific child was actually abused or neglected in some direct way by specific acts of the specific parent that occurred immediately prior to and caused removal, and the acts of abuse or neglect must be act that this Court determines constitutes abuse or neglect as it defines those terms, not as the relevant statutes and case law define them. And here, the majority refuses to conclude that even A.D.'s criminal acts of being involved in prostitution and subjecting K.N.D. to injury that directly caused her birth were sufficient to justify K.N.D.'s initial removal from A.D., and, therefore, A.D.'s parental rights cannot be terminated under section 161.001(1)(O) for her failure to follow the Family Service Plan, regardless of K.N.D.'s best interest or proof of abuse or neglect as those terms are defined and applied by the Family Code and other Texas courts.

Contrary to the majority's assertion, there is evidence in the record that A.D. was an active participant in a criminal, violent lifestyle—as demonstrated by A.D.'s protecting her roommate or pimp by claiming that she sustained the injuries that resulted in her hospitalization and K.N.D.'s birth because she merely "felt dizzy and fell down" and by requesting, the day after the assault, a key for the roommate or pimp who assaulted her. According to the majority, even this evidence is not enough to demonstrate abuse or neglect justifying termination. Nor

does the majority consider evidence that A.D. neglected S.L.A.D.—to the point that S.L.A.D. developed an abscess requiring "surgery on the brain"—and eventually relinquished her rights to S.L.A.D. ten days before K.N.D. was born because she determined she was unable to care for S.L.A.D. or that the decree of termination of A.D.'s rights to S.L.A.D. was pending before the same trial court at the time DFPS sought to remove K.N.D. Nor does it consider evidence that A.D. failed to cooperate with DFPS during the pendency of S.L.A.D.'s termination proceedings, did not complete her Family Service Plan with respect to S.L.A.D., and made no improvements in her ability to parent effectively or to provide appropriate supervision and care for her newborn child. And it does not consider that A.D.'s criminal behavior subjected her to violence and put her unborn child in harm's way and that the evidence at the termination hearing clearly and convincingly showed that she had not corrected this or any of the other behavior that had resulted in the removal of K.N.D. from her custody.

The approach to reviewing and deciding termination cases on appeal taken by the majority is clearly not what the legislature and the Texas Supreme Court have intended. *See, e.g.*, TEX. FAM. CODE ANN. § 261.001(4)(B)(iii) (providing that neglect encompasses "the failure to provide a child with food, clothing, or shelter necessary to sustain the life or health of the child, excluding failure caused primarily by financial inability *unless relief services had been offered and*

*refused*") (emphasis added); *id.* §§ 262.102, 262.201 (allowing trial court to consider whether child's household includes person who has abused or neglected another child in manner that caused serious injury to other child in determining whether there is immediate danger to physical health or safety of child at issue ; *J.F.C.*, 96 S.W.3d at 277–79 (discussing subsection 161.001(1)(O)).

Considering all of the evidence, I would hold that the evidence is legally sufficient to support the trial court's termination of A.D.'s parental rights to K.N.D. under section 161.001(1)(O). *See J.F.C.*, 96 S.W.3d 264–66. And, I would further conclude that the evidence is factually sufficient because the evidence is such that a reasonable fact finder could form a firm belief or conviction that grounds exist for termination under Family Code section 161.001(1)(O).[8] *See C.H.*, 89 S.W.3d at 25–26.

---

[8]  A.D. also argues, as part of her first issue, that there was no clear and convincing evidence of a court order that specifically established the actions necessary for her to obtain the return of her child. And she argues, in her second issue, that the evidence was insufficient to support the trial court's conclusion that termination of her parental rights was in K.N.D.'s best interest. The majority does not address these issues because of its holding that the insufficiency of the evidence that K.N.D. was removed under Chapter 262 for abuse or neglect requires reversal of the trial court's judgment. I would overrule both of these issues.

The trial court's May 17, 2011 order expressly incorporated the Family Service Plan and notified "the parents that each of the actions required of them below are necessary to obtain the return of the child." The trial court, as trier of fact, is presumed to be aware of the orders it had previously entered in the case, and thus it did not need to have their existence proven again. *See In re J.J.C.*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("[A] trial court is presumed to 'judicially know what has previously taken place in the case'

I would affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Keyes, J., dissenting.

---

tried before it, and the parties 'are not required to prove facts that the trial court judicially knows.'"); *see also In re C.M.C.*, No. 14-12-00186-CV, 2012 WL 3871359, at *3 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, no pet. h.) (holding, in response to argument that no evidence was presented during trial proving existence of court orders specifically establishing actions necessary to obtain return of child, that "this court has consistently held we may presume the trial court took judicial notice of the record without any request being made and without any announcement that it has done so").

I would also conclude that the evidence was sufficient to support the trial court's conclusion that termination of A.D.'s parental rights to K.N.D. was in K.N.D.'s best interest. *See* TEX. FAM. CODE ANN. § 263.307(b) (Vernon 2008) (providing factors to be considered in determining child's best interest); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (discussing same); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (same). At the time of trial, K.N.D. was a one-year-old child who had been placed with her foster family most of her life, had never lived with A.D., and had bonded with her sister and caregivers. A.D. did not establish that she had regular employment or a residence, and she did not interact appropriately with K.N.D. because she needed to be prompted to address K.N.D.'s basic needs such as feeding and diapering. A.D. engaged in prostitution and frequently associated with unsuitable men, who, at least on one occasion, subjected her to violence. She had also failed to take a court-ordered drug test. This evidence and the other record evidence clearly and convincingly shows that termination was in K.N.D.'s best interest.